# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 15-90V
Filed: January 10, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| JAMES MOORE, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | |
| v. | * | Decision on Interim Attorneys' Fees and |
| | * | Costs; Hourly Rate; Forum Rate; Excessive |
| SECRETARY OF HEALTH | * | Billing |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | |

*Lisa S. Levine, Esq.*, Lisa S. Levine, PA, Weston, FL, for Petitioner.
*Jennifer L. Renaud, Esq.*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On January 29, 2015, James Moore ("Mr. Moore" or "petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petitioner alleges that he suffers from peripheral neuropathy as a result of receiving two Hepatitis B ("Hep B") vaccinations on October 3, 2012 and December 7, 2012, respectively. Petition, ECF No. 1.

On May 4, 2018, petitioner's counsel filed a Motion for Leave to Withdraw as Counsel due to "irreconcilable differences [that] have arisen which makes it impossible for [her] firm to continue to represent [p]etitioner." Motion, ECF No. 60. On August 14, 2018, petitioner filed a Motion for Interim Attorneys' Fees and Costs ("Motion for Interim Fees"), requesting $7,099.95 in attorneys' fees and $2,597.29 in attorneys' costs, for a total of $9,697.24. ECF No. 65. On

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

September 11, 2018, respondent filed a response to petitioner's Motion for Interim Fees that contained no specific objection to the amount request or hours billed, but instead, asked that I exercise my discretion in determining the proper amount to be awarded. ECF No. 70. Petitioner did not file a reply to respondent's response.

## I.     Procedural History

Petitioner filed his petition on January 29, 2015. ECF No. 1. This case was originally assigned to Special Master Hamilton-Fieldman but was reassigned to me on January 14, 2016. *See* ECF Nos. 4, 28.

On February 2, 2015, Special Master Hamilton-Fieldman issued an initial order setting the deadline for petitioner to file complete medical records and a Statement of Completion by March 12, 2015. Order, ECF No. 5. Petitioner timely filed her medical records on February 20, 2015 (Petitioner's Exhibits ("Pet. Exs.") 1-9, ECF No. 8), after filing his first Motion to Strike the original filings because they were non-compliant with the Vaccine Program Rules. *See* Order, dated February 20, 2015. Petitioner did not file his Statement of Completion until March 18, 2015, after Special Master Hamilton-Fieldman's chambers sent petitioner's counsel a reminder email regarding the missed deadline. ECF No. 9; *see* Informal Communication, dated March 18, 2015.

On April 8, 2015, respondent filed a status report identifying several outstanding medical records. Respondent's Status Report ("Resp. S.R.") at 1-2, ECF No. 10. Respondent also noted that petitioner's medical records filed on February 20, 2015 were incorrectly filed and paginated. *Id*. at 1 n.1. Petitioner filed an affidavit on April 13, 2015, that was also incorrectly filed. *See* ECF No. 11. The same day, petitioner was ordered to strike and refile his medical records and affidavit by April 20, 2015, and file any outstanding records and an amended Statement of Completion by May 15, 2015. Order, ECF No. 12.

On April 28, 2015, Special Master Hamilton-Fieldman's chambers had to contact petitioner's counsel to remind her that she failed to meet the deadline to strike and refile her incorrectly filed exhibits per the Court's April 13, 2015 order. *See* Informal Communication, dated April 28, 2015. Petitioner filed correctly labeled and paginated exhibits the same day. *See* ECF No. 13.

On June 2, 2015, Special Master Hamilton-Fieldman's chambers again contacted petitioner's counsel to advise that she missed the May 15, 2015 deadline to file outstanding medical records and an amended Statement of Completion. Informal Communication, dated June 2, 2015. The next day, petitioner incorrectly filed Pet. Exs. 12-13 and an amended Statement of Completion. *See* ECF Nos. 14-15. Special Master Hamilton-Fieldman's chambers contacted petitioner's counsel to inform her that Pet. Exs. 12-13 were non-compliant with the Vaccine Rules. Informal Communication, dated June 3, 2015. Petitioner refiled Pet. Exs. 12-13 correctly on June 9, 2015. *See* ECF No. 16.

Respondent filed his Rule 4(c) Report on July 22, 2015, advising that he intended to defend this case. Respondent's Report at 1, ECF No. 17. A status conference was held on August 25, 2015, during which Special Master Hamilton-Fieldman advised petitioner that several medical

records remained outstanding. *See* Order at 1, ECF No. 18. Petitioner was ordered to file the outstanding medical records and an amended Statement of Completion by September 29, 2015. *Id.* Petitioner was also ordered to file an expert report by October 13, 2015. *Id.*

On October 5, 2015, Special Master Hamilton-Fieldman's chambers again emailed petitioner's counsel regarding the missed September 29, 2015 deadline for filing outstanding medical records. Informal Communication, dated October 5, 2015. After five Motions for Extension of Time to file the outstanding records and an expert report,[3] petitioner filed an expert report from Dr. William Sheremata and accompanying medical literature on June 27, 2016. *See* Pet. Exs. 14-18, ECF Nos. 34-40. In this report, Dr. Sheremata opined that petitioner suffers from acute disseminated encephalomyelitis ("ADEM") as a result of the hepatitis B vaccine petitioner received on December 7, 2012. Pet. Ex. 14 at 3.

A status conference was held on August 16, 2016, after which petitioner was once again ordered to file any outstanding medical records and transcribed office visit notes from Dr. Nochisom in compliance with the Vaccine Rules by no later than October 17, 2016. Order at 2, ECF No. 41. On November 7, 2016, my chambers contacted petitioner's counsel to inform her that she missed the medical records filing deadline. Informal Communication, dated November 7, 2016. Petitioner filed a Motion for Extension of Time on November 10, 2016, requesting an additional 60 days to file the outstanding records. Motion, ECF No. 42. This motion was granted on the same day it was filed and petitioner was ordered to file outstanding medical records and transcribed notes by December 19, 2016. Non-PDF Order, dated November 10, 2016. Petitioner improperly filed his outstanding medical records on November 30, 2016. *See* Pet. Exs. 19-20, ECF Nos. 43-44.

A status conference was held on January 26, 2017, after which petitioner was ordered to file a Motion to Strike and refile Petitioner's Exhibits 19-20 by no later than February 27, 2017. Order, ECF No. 45. Petitioner was also ordered to file a supplemental expert report from Dr. Sheremata providing the basis upon which he concluded that petitioner had suffered ADEM, by no later than May 26, 2017. *Id.* Petitioner moved to strike the improperly filed medical records on February 22, 2017 (Motions, ECF Nos. 46-47) and untimely filed the outstanding medical records and office note transcriptions on March 17, 2016.[4] *See* ECF Nos. 48-50.

On April 19, 2017, petitioner filed a Motion for Extension of Time to file a supplemental expert report as petitioner's original expert, Dr. Sheremata, had passed away. Motion at 1, ECF No. 51. A status conference was held on June 29, 2017, after which petitioner was ordered to file a status report advising the court on his progress in obtaining a new expert by August 1, 2017. Order, ECF No. 53. After three Motions for Extension of Time (ECF Nos. 54, 56-57), one of which petitioner advised he had found a new expert, petitioner filed an expert report from Dr. Waden Emery on March 5, 2018. Motion at 1, ECF No. 54. On March 7, 2018, I issued an order pointing out that Dr. Emery's report failed to address any of the three prongs set forth in *Althen v. Sec'y of*

---

[3] Three of these Motions for Extension of Time were granted by Special Master Hamilton-Fieldman (Motions, ECF Nos. 22, 24, 26) and two were granted by me (Motions, ECF No. 32-33). This matter was transferred to me on January 14, 2016. ECF No. 28.

[4] These documents were filed approximately three weeks after the deadline.

*Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Order at 1-2, ECF No. 59. Consequently, I ordered petitioner to file a supplemental report from Dr. Emery addressing the *Althen* prongs by May 7, 2018. *Id.* at 2.

On May 4, 2018, petitioner's counsel filed a Motion for Leave to Withdraw as Counsel due to "irreconcilable differences [that] have arisen which makes it impossible for [her] firm to continue to represent [p]etitioner." Motion at 1, ECF No. 60. On May 7, 2018, petitioner filed a supplemental expert report from Dr. Emery, along with supporting medical literature. *See* ECF No. 61. A status conference was held on July 11, 2018, after which petitioner's counsel was ordered to file a Motion for Interim Fees by August 10, 2018. Order at 1, ECF No. 62. On August 10, 2018, petitioner filed a Motion for Extension of Time to file her Motion for Interim Fees by August 17, 2018, which was granted. Motion, ECF No. 63; Non-PDF Order, dated August 13, 2018.

On August 14, 2018, petitioner's counsel filed a Motion for Interim Fees, requesting $7,099.95 in attorneys' fees and $2,597.29 in attorneys' costs, for a total of $9,697.24. Motion for Interim Fees at 1-2, ECF No. 65. On September 11, 2018, respondent filed a response to petitioner's Motion for Interim Fees that contained no specific objection to the amount requested or hours billed, but instead, asked that I exercise my discretion in determining the proper amount to be awarded. Response at 3, ECF No. 70. Petitioner did not file a reply to respondent's response.

This matter is now ripe for determination.

## II.     Applicable Legal Standards

The Vaccine Act permits an award of reasonable attorneys' fees and other costs. § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is automatically entitled to reasonable attorneys' fees. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in good faith and there was a reasonable basis for the claim to proceed. § 15(e)(1). Moreover, special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Humans Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010); *see Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). One instance in which interim fees have been awarded is "where proceedings are protracted." *Avera*, 515 F.3d at 1352.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes reasonable attorneys' fees and other costs under the Vaccine Act. *Avera*, 515 F.3d at 1349. Under this approach, [t]he initial estimate of a reasonable attorney's fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

### III.     Discussion

#### A.     Availability of Interim Fees

The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." 515 F.3d at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods*, 105 Fed. Cl. at 154, and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). The inquiry is simply whether there is "a good faith basis for the claim" and the denial of interim fees would "impose[] an undue hardship" in the circumstances of the case. *Shaw*, 609 F.3d at 1375. In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

In the circumstances of this case, interim fees are warranted. First, this case has been pending for three years, which ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g.*, *Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees). Second, respondent does not dispute that there is "a good faith basis for [petitioner's] claim." *Shaw*, 609 F.3d at 1375; *see Sharp-Rountree*, 2015 WL 12600336, at *3 (explaining that "petitioners are entitled to a presumption of good faith absent direct evidence of bad faith" and finding a good faith basis when respondent "declined to challenge [it]"). Finally, Ms. Levine filed a Motion for Leave to Withdraw as Counsel due to irreconcilable differences on May 4, 2018 (ECF No. 60). Petitioner's counsel is entitled to an award of attorneys' fees and cost at this time. In sum, the circumstances of this case warrant an award of interim fees and costs.

#### B.     Reasonable Hourly Rates

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez* v. *Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *See Hall* v. *Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (Fed. Cir. 2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.* v. *U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). For cases in which forum rates apply,

*McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch* v. *Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19-22 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[5]

In this case, Ms. Levine practices in Weston, Florida, which is located approximately 40 miles outside of Miami, in Broward County. According to the Bureau of Labor Statistics, Broward County is considered part of the Miami-Fort Lauderdale-West Palm Beach, Florida Metropolitan area.[6] The size of the Miami-Fort Lauderdale-West Palm Beach, Florida Metropolitan area is comparable to several other metropolitan areas, such as Philadelphia, Houston, and Boston, in which forum rates apply. *See, e.g.*, *Tetlock v. Sec'y of Health & Human Servs.*, No. 10-56V, 2018 WL 4868997, at *2 (Fed. Cl. Spec. Mstr. Sept. 11, 2018) (awarding forum rates to Lawrence Cohan, a vaccine attorney who practices in Philadelphia); *Johnson v. Sec'y of Health & Human Servs.*, No. 14-254V, 2017 WL 2927307, at *3 (Fed. Cl. Spec. Mstr. June 6, 2017) (determining forum rates are appropriate for Houston attorney, Sean Greenwood); *Abbott v. Sec'y of Health & Human Servs.*, No. 10-485V, 2017 WL 2226614, at *5 (Fed. Cl. Spec. Mstr. Apr. 26, 2017) (stating the attorneys who practice at the Boston firm, Conway & Homer, P.C., should be awarded forum rates). Additionally, special masters have consistently awarded forum rates to legal professionals practicing in Sarasota, Florida, a metropolitan area much smaller than Miami. *See Lewis v. Sec'y of Health & Human Servs.*, No. 16-1394V, 2018 WL 3433343, at *2-3 (Fed. Cl. Spec. Mstr. June 8, 2018) (determining Alison Haskins, an attorney who practices in the Sarasota, Florida office of Maglio, Christopher & Toale, is entitled to forum rates); *Dezern v. Sec'y of Health & Human Servs.*, No. 13-643V, 2016 WL 6678496, at *6-7 (Fed. Cl. Spec. Mstr. Oct. 14, 2016) (awarding forum rates to F. John Caldwell, an attorney who practices in Maglio, Christopher & Toale's Sarasota, Florida office). Therefore, forum rates apply in this case.

Petitioner requests $7,099.95 in fees for his attorney, Ms. Levine, at a rate of $415 per hour for 2014-2016, $424 per hour for 2017, and $439 for 2018. *See* Motion for Interim Fees, Ex. A. However, the requested hourly rates are above the appropriate rate for an attorney with Ms. Levine's experience in the Vaccine Program per the *McCulloch* framework. Ms. Levine was admitted to the State Bar of Florida in 1986. Motion for Interim Fees, Ex. A. However, this is Ms. Levine's first case in the Vaccine Program, and the lower end of the *McCulloch* range is thus appropriate. *See Srour v. Sec'y of Health & Human Servs.*, No. 14-283V, 2017 WL 2537373, at *4 (Fed. Cl. Spec. Mstr. May 17, 2017) (awarding hourly rate based in part on "specific experience with the Vaccine Program"); *Dipietro v. Sec'y of Health & Human Servs.*, No. 15-742V, 2016 WL 7384131, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (considering level of experience in the Vaccine Program in determining appropriate hourly rate). In 2014 through 2016, Ms. Levine fell into the *McCulloch* range for attorneys with 20 to 30 years of experience and is awarded the low end of that range. She moved into the next range for attorneys with 31+ years of experience in 2017 and 2018. Additionally, as the procedural history reveals, counsel had a difficult time complying with

---

[5] This fee schedule is posted on the court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule*, http://www.uscfc.uscourts.gov/node/2914.

[6] *May 2017 Metropolitan and Nonmetropolitan Area Definitions*, Bureau of Labor Statistics (Mar. 30, 2018), https://www.bls.gov/oes/2017/may/msa_def.htm#33100.

6

the rules for filing and for complying with the Court orders and established deadlines. Therefore, she is being paid at the low end of the applicable ranges. Thus, I will reduce Ms. Levine's 2014 through 2016 requested rate of $415 per hour to $350 and the 2017 and 2018 requested rates of $424 and $438 per hour to $385 pursuant to the *McCulloch* framework. *See McCulloch*, 2015 WL 5634323 at \*19-22. Therefore, Ms. Levine will be awarded $5,512.50 based on the following calculations.

| Year | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| 2014 | $350 | 1.6 | $560.00 |
| 2015 | $350 | 6.45 | $2,257.50 |
| 2016 | $350 | 1.65 | $577.50 |
| 2017 | $385 | 3.45 | $1,328.25 |
| 2018 | $385 | 2.05 | $789.25 |
|  |  |  | **$5,512.50** |

### C. Hours Reasonably Expended

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. The application for fees and costs must "sufficiently detail and explain the time billed so that a special master may determine . . . whether the amount requested is reasonable," and an award of attorneys' fees may be reduced for "vagueness" in billing. *J.W. ex rel. Wilson* v. *Sec'y of Health & Human Servs.*, No. 15-1551V, 2017 WL 877278, at \*4 (Fed. Cl. Spec. Mstr. Feb. 10, 2017). Moreover, counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton* v. *Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo* v. *Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

Furthermore, some tasks are generally compensated at a reduced rate. Attorneys who perform non-attorney-level work are compensated at a rate comparable to what would be paid for a paralegal or secretary. *See O'Neill* v. *Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott* v. *Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at \*3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). Finally, some tasks are never compensable. For instance, "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews* v. *Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at \*2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). And clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at \*26. Non-compensable clerical and secretarial tasks include making travel arrangements, reviewing and paying invoices, setting up meetings, organizing files, scheduling conference calls, and reviewing files for consistency. *J.W.*, 2017 WL 877278, at \*3; *Barry* v. *Sec'y of Health & Human Servs.*, No. 12-039V, 2016 WL 6835542, at \*4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).

It is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen* v. *Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming special master's reduction of attorney and paralegal hours); *Guy* v. *Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). Ultimately, special masters have substantial discretion in awarding fees and costs, and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella* v. *Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen*, 102 Fed. Cl. at 729.

Upon review of petitioner's Motion for Interim Fees, I noted billing issues concerning counsel billing at her rate for tasks that were paralegal in nature or that were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521.[7] For example, Ms. Levine billed for requesting medical records from providers, scheduling teleconferences with experts' assistants, and sending priority mail regarding expert witnesses.[8] These are tasks that must be billed at paralegal rates or not billed at all as they are secretarial. Additionally, on multiple occasions, Ms. Levine billed .3 hours (18 minutes) for completing menial filing tasks that should take very little time , such as filing statements of completion and motions to strike.[9] These are also tasks to be performed by office staff. For these reasons, I find that petitioner's fee award should be reduced by 5%. Petitioner is advised that future billing infractions may result in a higher percentage reduction. Petitioner is hereby awarded **$5,236.88** in attorneys' fees.

### D. Reasonable Costs

Petitioner requests $2,597.29 in attorneys' costs. *See* Motion for Fees, Ex. B. Typically, the Court will only award attorneys' costs for expenditures that are evidenced by receipts. *Brown v. Sec'y of Health & Human Servs.*, No. 09-426V, 2012 WL 952268, at *11 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (declining to compensate an attorney for costs where no receipts documented the costs). Here, while petitioner requested $2,597.29 in attorneys' costs, petitioner's counsel only provided receipts for medical records requests and expert fees in the amount of $1,909.76. I therefore find that petitioner will be reimbursed only for expenses for which receipts were provided.[10] Therefore, petitioner is awarded **$1,909.76** for attorneys' costs, which represents only the costs for which supporting documentation was filed.

---

[7] The following entries are examples and are not exhaustive; they merely provide a sampling.

[8] *See, e.g.*, Motion for Fees, Ex. A at 1 ("MRR [medical records request] to Ross Nochimson MD"); *id*. ("MRR to Dr. Sheremata"); *id*. ("MRR to University Hospital re films").

[9] *See, e.g.,* Motion for Fees, Ex. A at 1-2.

[10] Again, petitioner's counsel failed to follow the Vaccine Guidelines.


### IV. Total Award Summary

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED IN PART**. Accordingly, I award **$7,146.64**,[11] representing $5,236.88 in attorneys' fees, and $1,909.76 in attorneys' costs, **in the form of a check payable jointly to petitioner and petitioner's counsel, Lisa S. Levine, Esq**. The clerk shall enter judgment accordingly.[12]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special master

---

[11] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See Beck* v. *Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.